COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


ALVIN J. COOPER, S/K/A
 ALVIN JERMAINE COOPER
                                          OPINION BY
v.          Record No. 0489-97-1     JUDGE RICHARD S. BRAY
                                        FEBRUARY 17, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Walter J. Ford, Judge

            Charles E. Haden (J. Robert Harris, III, on
            brief), for appellant.

            Steven A. Witmer, Assistant Attorney General
            (Richard Cullen, Attorney General;
            Kimberley A. Whittle, Assistant Attorney
            General, on brief), for appellee.



     Alvin J. Cooper (defendant) was convicted in a bench trial

for robbery and the related use of a firearm in violation of Code

§§ 18.2-53.1 and 18.2-58.  On appeal, he complains that the trial

court erroneously admitted into evidence the written statement of

a codefendant and challenges the sufficiency of the evidence to

support the convictions.  Finding no error, we affirm the

decision of the trial court.

     In accordance with well established principles, we consider

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218

S.E.2d 534, 537 (1975).

     At approximately 6:00 a.m. on April 27, 1996, Kentwan Boone,

Charles Scott, and defendant approached the victim as he prepared to enter his truck. While standing within "two or three feet" of the victim, one of the three pointed a firearm at him and demanded money. The other two were positioned "[b]ehind the truck a couple of feet," and "[o]ff to the right," approximately "15 to 20" feet away. The victim recalled that the weapon "looked like a handgun . . . [with] a copper metallic look" but "[w]hether it was real or not, [he] could not tell." Fearful, the victim emptied his pockets onto the ground. One assailant grabbed the victim's keys, another removed the victim's "portfolio" from his truck, and the perpetrators then fled in a vehicle driven by defendant and owned by his father.

A nearby resident observed the robbery and alerted police. Soon thereafter, Virginia State Trooper Stephen Harris stopped the vehicle and ascertained that defendant was the driver, Boone and Scott the passengers. The victim's checkbook and operator's license were found on the front seat. Minutes later, another officer brought the victim to the scene, and he identified the three suspects as the robbers.

Both Boone and defendant provided investigators with written statements. Boone admitted that the threesome were "planning to rob someone" when they initially observed the victim. He recalled that Scott wielded the weapon, a "real" gun, and that defendant had discarded the victim's portfolio as he drove the getaway vehicle from the crime scene. Defendant acknowledged

- 2 -

only "watching" the robbery, "kick[ing]" the victim's keys, and driving his companions away.  He denied involvement in planning the offense, explaining that the men were en route "to meet a guy named Kevin" when they observed the victim, "walking."  He claimed that Boone then "pulled out the water gun" and demanded that the victim "stop looking at where they were going."  When police asked defendant why the victim was "chosen to be robbed," he responded that "[h]e was the only one out, watching us."

The Commonwealth subpoenaed Boone for trial on three separate occasions,[1] always at the same address.  The sheriff's returns reported personal service on Boone in the first instance on October 3, 1996, for trial October 21, 1996, and "posted" service on October 30, 1996, for trial November 5, and, again, on November 18, 1996, for the actual trial date, January 10, 1997.  Nevertheless, Boone failed to appear at trial and the Commonwealth offered his statement to police as evidence against defendant, relying upon Boone's unavailability to testify as an exception to the hearsay rule.  Overruling defendant's objection, the court concluded that "looking at the totality of the circumstances, . . . [Boone's] absence here today would lead me to believe that he is unavailable, so I declare him to be a witness that's unavailable," and Boone's confession was received into evidence.

---

[1] Trial was twice continued, but these delays are not in issue.

In Virginia, for a declaration against penal interest to be admissible, it must meet the following requirements: (1) the declarant must be "unavailable to testify at trial," (2) the statement must be against the declarant's interest at the time it was made; and (3) the declarant must be aware at the time the statement is made that it is against his or her interest to make it. While it is settled . . . that a declaration against penal interest is recognized as an exception to the hearsay rule, "'such a declaration made out of court by . . . [an] unavailable witness is admissible only upon a showing that the declaration is reliable.'"

Randolph v. Commonwealth, 24 Va. App. 345, 355, 482 S.E.2d 101, 105-06 (1997) (citations omitted). Defendant challenges only Boone's unavailability to testify and the reliability of his statement to police.

"[A] declarant is unavailable if the party seeking to introduce the statement has been unable by diligent inquiry to locate the declarant." McDonnough v. Commonwealth, 25 Va. App. 120, 127, 486 S.E.2d 570, 573 (1997) (citations omitted). "Due diligence requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted." Id. at 129, 486 S.E.2d at 574 (citations omitted). However, "at a minimum, . . . a party [must] attempt to subpoena the witness or provide a reasonable explanation of why a subpoena was not issued." Id. "'The party offering [the] hearsay testimony has the burden of establishing the witness' "unavailability." Determining whether the offering party has met

its burden and, thus, whether the declarant is "unavailable," is left to the trial court's discretion,'" and "will be reversed on appeal only if plainly wrong or without evidence to support it." Id. at 127, 486 S.E.2d at 573; see also Wise Terminal Co. v. McCormick, 107 Va. 376, 379, 58 S.E. 584, 585 (1907); Doan v. Commonwealth, 15 Va. App. 87, 102, 422 S.E.2d 398, 406 (1992).

Here, the record clearly discloses the Commonwealth's diligence in seeking to compel Boone's presence when the subject indictments were scheduled for trial. Timely subpoenas, issued only weeks apart to the same address, had resulted in both personal and posted service on Boone. Nothing suggested that Boone had relocated or was otherwise unaware of the subpoenas. Under such circumstances, the court properly exercised sound discretion in concluding that the Commonwealth had acted responsibly to secure Boone's attendance at trial and thereby established his unavailability.[2]

## Reliability

"'[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination.'" McDonnough, 25 Va. App. at 131, 486 S.E.2d at 575 (quoting Lee v.

---

[2]On appeal, defendant contends the trial court found Boone unavailable only because the Commonwealth anticipated an invocation of his Fifth Amendment rights. However, this assertion is unsupported by the record.

<u>Illinois</u>, 476 U.S. 530, 541 (1986)).  "'But where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.'"  <u>Id.</u> (quoting <u>White v. Illinois</u>, 502 U.S. 346, 356 (1992)).  Thus,

> "'once it has been established that a third-party confession has been made, the crucial issue is whether the <u>content</u> of the confession is trustworthy.  And determination of this issue turns upon whether . . . the case is one where "there is anything substantial other than the bare confession to connect the declarant with the crime."'"

<u>Randolph</u>, 24 Va. App. at 356, 482 S.E.2d at 106 (quoting <u>Morris v. Commonwealth</u>, 229 Va. 145, 147, 326 S.E.2d 693, 694 (1985) (citation omitted)).  "[T]he Virginia Supreme Court has made '"no attempt . . . to delineate the quality or quantity of evidence necessary to establish reliability; the question must be left to the sound discretion of the trial court, to be determined upon the facts and circumstances of each case."'"  <u>Id.</u> (citations omitted).

Here, Boone and defendant were among three men apprehended in a vehicle driven by defendant, moments after an armed robbery and in possession of property stolen during the offense.  Within minutes, all were identified by the victim.  Boone confessed to a detective shortly thereafter, naming defendant, Scott, and himself as the perpetrators.  Moreover, defendant subsequently admitted complicity in a statement to the same investigator.  Thus, the reliability inherent in Boone's admissions against his

penal interest was substantially enhanced by other evidence relating both Boone and defendant to the crimes, and the court correctly found the statement sufficiently trustworthy. See Randolph, 24 Va. App. at 356-57, 482 S.E.2d at 106.


## Sufficiency of the Evidence

Boone's confession, together with the victim's identifications, defendant's statements, and the circumstances of his apprehension, provided ample evidence to support the robbery conviction. With respect to the firearm offense, the victim testified that the weapon "looked like a handgun . . . [with] a copper metallic look," Boone described it as "real," and defendant testified that he "assume[d]" Boone "would know what kind of gun it was." Thus, viewed in the light most favorable to the Commonwealth, the evidence provided ample support for both convictions.

Accordingly, we affirm the judgment of the trial court.

Affirmed.