COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


JANNIE BRANT
                                        OPINION BY
v.    Record No. 1691-98-2        JUDGE ROBERT P. FRANK
                                        APRIL 25, 2000
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
                    Timothy J. Hauler, Judge

          William B. Bray (Perry & Bray, on brief), for
          appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Jannie Brant (appellant) appeals her convictions of armed

robbery and conspiracy to commit robbery after a bench trial on

December 9, 1997.  On appeal, she contends the trial court erred

in:  1) admitting hearsay statements of alleged accomplices,

Mandel Coleman and Algie Harris, 2) limiting her

cross-examination of prosecution witness Charles Mason, and 3)

restricting her testimony about statements made by alleged

co-conspirators during the alleged conspiracy.  We agree with

appellant that the trial court erred in admitting into evidence

the hearsay statements of the alleged accomplices but find that

she did not properly preserve the second and third issues.  We,

therefore, reverse and remand for further proceedings if the Commonwealth be so advised.

## I.  BACKGROUND

On June 10, 1997, a McDonald's restaurant in Colonial Heights was robbed by two men.  One man had a pistol, and the other had a shotgun.  The two men pointed their guns at the restaurant shift manager, threatened to shoot him, and grabbed a portion of the night deposit money before leaving the restaurant.

Officer Earley of the Colonial Heights Police Department testified that he identified appellant as a suspect in the robbery.  Before questioning her at the police station, he advised her of her Miranda rights and she signed a waiver form. Officer Earley testified that appellant denied driving the robbers to the McDonald's restaurant.  After Earley told appellant she was videotaped in the Golden Corral parking lot next to the McDonald's with three men in her car, she admitted she drove three men to the Golden Corral parking lot on the night of the robbery.  She identified two of the men as Charles Mason and Algie Harris.  She did not know the name of the third man.  He was later identified as Mandel Coleman.

Appellant told Earley that Algie Harris and Mandel Coleman exited the car after she drove into the Golden Corral parking lot.  She did not know where they went.  As she started to drive out of the Golden Corral parking lot, Mason told her they needed

to go back to pick up Harris and Coleman.  She made a loop around the shopping center where the restaurants were located and drove back to the Golden Corral parking lot.  The two men got into the car.  She said she saw Coleman with a bookbag but was unaware of what had happened.  She told Earley that she did not see a shotgun in the car but did see what appeared to be a pistol in Coleman's waistband when she took him to Petersburg later that evening.

Officer Earley also testified about statements made by Mandel Coleman:

> [PROSECUTOR]:  Okay.  At some point in time, did you ask him about any participation of Jannie Brant, the defendant here in this case in that incident?
>
> [OFFICER]:  Yes, I did.
>
> [PROSECUTOR]:  When you made that inquire [sic] of him, had you already advised him that he was a suspect in the charge also?
>
> [OFFICER]:  Yes.
>
> [PROSECUTOR]:  And what did you ask him about her and what did she tell you -- what did he tell you?
>
> [OFFICER]:  He advised me that Jannie -- he rode up there with Algie.
>
> [DEFENSE COUNSEL]:  Objection, Your Honor, we have hearsay.
>
> THE COURT:  Do we have a Brewton [sic] violation here?
>
> [PROSECUTOR]:  Your Honor, actually, we don't.  What we have here is a case that falls under Randolph versus the Commonwealth

and Chanaler versus the Commonwealth.  The Courts in this jurisdiction have set out exceptions to the hearsay rule and this falls exactly, squarely in that exception. The Commonwealth must first show that it was a statement made against the person making the statements [sic] penal interests; therefore, making it a reliable statement. We must also show that he is unavailable to the Commonwealth and we have done that exactly as the case law has described.  The person making that statement is charged and still waiting trial and as such is unavailable to the Commonwealth as a witness.  I have the case for the Court, if you like to see it.

[DEFENSE COUNSEL]:  Your Honor, I believe they need to have him come in, if they're going to prove unavailability, and put him on the stand and have him say, "No, I take the Fifth," or "I refuse to testify."

[PROSECUTOR]:  Your Honor, the case law specifically addresses that question, Randolph and Chandler, which Randolph addresses the issue of using those statements in a joint trial.  Chandler addresses the issue of using them in separate trials.  The Court specifically said the Commonwealth is not required to do that.

THE COURT:   Mr. Paul, do you have any comment you want to put on the record?

[DEFENSE COUNSEL]:  Your Honor, they haven't pulled in Mr. Coleman.  We don't know if he is available or not.  He is a co-conspirator or alleged co-conspirator and is charged with these crimes.  Also, the -- at the time he made his statement, you know, we don't know what -- you, what was going on, what was said to him or anything else. Certainly, no one had a chance to. Basically, they're offering this hearsay that can't be cross-examined, can't be looked at in any way.  They're offering it for the truth of the matter.  They're not

offering it for any other reason and I think it's inappropriate.

THE COURT: All right. The defense objection is overruled. The Court finds specifically pursuant to Randolph versus Commonwealth, 24 VA Appellate 345, that this co-actor, co-conspirator is reasonably unavailable to testify due to his Fifth Amendment rights; that there was a statement apparently admissible against him that was rendered and the Court will find that that statement may be properly presented during the course of this trial. Defense exception to the Court's ruling is noted for the record.

[DEFENSE COUNSEL]: Thank you, Your Honor.

Officer Earley then testified that Coleman admitted that he robbed the restaurant with Algie Harris. Coleman told Earley that appellant drove him, Algie Harris, and Charles Mason to the Golden Corral parking lot. After the robbery, appellant drove the men back to Petersburg, and Harris gave her some of the money taken during the robbery.

Officer Earley also testified as to his conversation with Algie Harris. Appellant noted her objection for the reasons stated in her objection to the hearsay testimony regarding Coleman's statements. The court overruled the objection and permitted Earley to testify.

Officer Earley stated that Algie Harris told him that Harris, Coleman, and appellant discussed robbing the restaurant prior to the event. Appellant drove Harris, Coleman, and Mason to the Golden Corral parking lot. She drove them back to

Petersburg after he and Coleman robbed the restaurant.  Harris told Officer Earley that Coleman paid appellant from the robbery proceeds.  Officer Earley recovered the shotgun from Harris' residence.

Charles Mason, the front seat passenger in appellant's vehicle, testified at trial.  He stated that appellant, Harris, and Coleman planned the robbery at a laundromat before going to the McDonald's restaurant, and appellant directed Harris to bring a gun.  He testified that appellant drove Harris and Coleman to the McDonald's and was given money after the robbery.  During cross-examination, defense counsel attempted to impeach Mason.

> [DEFENSE COUNSEL]:  Okay.  Have you ever been charged with a felony?
>
> [PROSECUTOR]:  Objection.  It's improper.
>
> [DEFENSE COUNSEL]:  Have you ever been convicted of a felony?
>
> [PROSECUTOR]:  Objection, Your Honor, he's juvenile.  Case of Alaska versus United States, it's prohibited from asking juvenile that question.
>
> THE COURT:  Mr. Paul?
>
> [DEFENSE COUNSEL]:  I can't cite the case law, Your Honor, but I think that we have credibility issues here.  Just because he's a juvenile, now we're going to embrace him and say, yes, he gets these special protections and we can't attack his credibility.
>
> [PROSECUTOR]:  I didn't make the rule, Judge, I'm just telling you that's what the

case says.  It could perhaps be phrased a different way.

THE COURT:  Rephrase your question.

[DEFENSE COUNSEL]:  Have you ever been investigated for a crime that's considered a felony?

[PROSECUTOR]:  Objection, Your Honor.

THE COURT:  Well, that's objectionable. Sustained.

[DEFENSE COUNSEL]:  Let me rephrase it.  If I had the case, it'd be easier.

[DEFENSE COUNSEL]:  Are you currently -- how old are you right now?

MASON:  Sixteen.

[DEFENSE COUNSEL]:  Sixteen. Okay.  Have you -- are you currently under any supervision?

[PROSECUTOR]:  Objection, Your Honor.

THE COURT:  Sustained.

Appellant testified at trial.  On direct examination she testified as follows:

[DEFENSE COUNSEL]:  What I'd like you to do is tell the Court your first contact with Algie Harris and Mandel Coleman on the date of June 10th.

[APPELLANT]:  Well, my first contact with them was in China Kitchen, a Chinese restaurant.  And it was Johnny and Joe and Charlie, Mandel Coleman or Nafece was not present.

[DEFENSE COUNSEL]:  Okay.  Johnny is the same person as Algie?

[APPELLANT]:  Yes.

[DEFENSE COUNSEL]:  Okay.  So you met them there and what did you all talk about?

[APPELLANT]:  He asked me could I give them a ride later on that night to go to Golden Corral.

[DEFENSE COUNSEL]:  And what did you tell him?

[APPELLANT]:  Yes, but he had to give me some gas money.

[DEFENSE COUNSEL]:  What was his response?

[APPELLANT]:  He said okay.

[PROSECUTOR]:  I'm sorry, Your Honor.  I have an objection at this point.  These are out-of-court statements offered for the truth of the matter.

[DEFENSE COUNSEL]:  It's a conversation, Your Honor, that she's in the middle of.  It is relevant to the fact that the Commonwealth has come in and has said, "Hey, they talked to Detective Earley and they're under interrogation and we're taking all their statements in," and now they're saying ---

THE COURT:  Yeah, but those were statements against interest.  This is not a statement against interest.  Those individuals could be called for that testimony.

[DEFENSE COUNSEL]:  Fair enough.

THE COURT:  They've got Fifth Amendment rights, but their Fifth Amendment rights don't exclude them to testify in this matter.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  Sustained.

[DEFENSE COUNSEL]:  Okay, Your Honor.

## II.  HEARSAY STATEMENTS

Appellant contends the trial court erred in permitting Officer Earley to testify as to the statements of Mandel Coleman and Algie Harris.  We agree.

The trial court permitted introduction of the hearsay testimony from Officer Earley because the two declarants, Harris and Coleman, were unavailable to testify.  The trial court ruled that under Randolph v. Commonwealth, 24 Va. App. 345, 482 S.E.2d 101 (1997), Harris and Coleman were unavailable to testify by virtue of the Fifth Amendment to the United States Constitution. Randolph involved the admissibility of a hearsay statement by a co-conspirator where the defendant and the co-conspirator were tried jointly at the same trial.  See Randolph, 24 Va. App. at 351, 482 S.E.2d at 103-04.  We held that the Commonwealth was not required to call the co-conspirator as a witness to establish unavailability because the co-conspirator could not be compelled to testify as a codefendant in the joint trial.  See id. at 356, 482 S.E.2d at 106.

We hold that the trial court erred in its application of Randolph.  In this case, the alleged co-conspirators were not tried jointly with appellant.  There was no evidence of their unavailability.  Therefore, the rule from Randolph is inapplicable in this case, and the trial court erred in ruling that Harris and Coleman were unavailable.

The Commonwealth argues in its brief that, assuming error on the part of the trial court, appellant waived her objection to the introduction of Officer Earley's testimony regarding the statements made by Harris and Coleman because on cross-examination she questioned the officer about the statement made by Mason. The Commonwealth argues that because appellant introduced evidence of a like nature she waived her objection, and, therefore, any error by the trial court was harmless. We disagree.

> An objection to previously introduced testimony is not waived by "the mere cross-examination of a witness or the introduction of rebuttal evidence, either or both." Snead v. Commonwealth, 138 Va. 787, 801, 121 S.E. 82, 86 (1924); Culbertson v. Commonwealth, 137 Va. 752, 757, 119 S.E. 87, 88 (1923). A waiver does not result until the party objecting to the introduction of evidence actually introduces, on his own behalf, evidence that is similar to that to which the objection applies. Id.

McGill v. Commonwealth, 10 Va. App. 237, 244, 391 S.E.2d 597, 601 (1990).

In this case, appellant questioned Officer Earley on cross-examination about the statement Mason made to Earley. Mason also testified at trial. We hold that Earley's testimony about Mason's statement was not a waiver of the objectionable testimony regarding statements made by Harris and Coleman.

The Commonwealth also argues that any error committed by the trial court was harmless. We disagree. Appellant argued at

trial that she was unable to cross-examine the hearsay declarants, Harris and Coleman, because their statements came into evidence through the testimony of Officer Earley. Appellant's argument at trial preserved the constitutional issue of right to cross-examination under the Sixth Amendment to the United States Constitution.

"'[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review must be set aside." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). "This standard requires a determination of 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Id. (quoting Chapman, 386 U.S. at 23).

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Id. (citations omitted).

We believe that this case is squarely on point with Lilly. In Lilly, the Supreme Court of Virginia held that the inadmissible statement of one co-conspirator was the only evidence that corroborated the other co-conspirator's in-court

testimony that the defendant was the triggerman in the murder.

See id. at 552-53, 523 S.E.2d at 209.  The Court wrote:

> [H]ere the issue is not the credibility of
> the witness, but rather the potential for
> harm caused by the erroneous admission of
> evidence which tends to support the jury's
> credibility determination.  In that context
> we must presume that such evidence had the
> potential to influence the jury into
> accepting the properly admitted evidence as
> more credible and, thus, to taint the jury's
> determination of the facts.

Id. at 553, 523 S.E.2d at 210.

In this case, Mason's testimony clearly implicates appellant in planning the robbery of the McDonald's restaurant. The only evidence that corroborates Mason's testimony about appellant's participation in the robbery is the hearsay statements of Harris and Coleman.  In the absence of the hearsay statements, Mason's testimony is supported only by evidence that appellant drove the men to the restaurant.  We assume that the jury weighed Mason's credibility in light of the corroborating hearsay evidence.  Therefore, we cannot declare beyond a reasonable doubt that the admission of the hearsay testimony was harmless.  We reverse appellant's convictions and remand for further proceedings if the Commonwealth be so advised.

III.  CROSS-EXAMINATION OF MASON AND APPELLANT'S HEARSAY

Appellant contends that the trial court erred in limiting her cross-examination of Charles Mason and in restricting her testimony detailing statements made by the co-conspirators.  We

find that appellant did not properly preserve these issues for appellate review.

> "When testimony is delivered but excluded upon objection, an appellate court has a record of the content and purport of the testimony upon which to determine the propriety of the trial court's ruling; when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer."

Whittaker v. Commonwealth, 217 Va. 966, 968-69, 234 S.E.2d 79, 81 (1977) (quoting Jackson's Case, 98 Va. 845, 846-47, 36 S.E. 487, 488 (1900)).  "The requirement for proffer of testimony is to assure that the record will be complete."  Wyche v. Commonwealth, 218 Va. 839, 843, 241 S.E.2d 772, 775 (1978).

Appellant did not proffer the testimony of Mason regarding whether he was previously convicted of a felony[1] and did not proffer her own testimony regarding the statements of the co-conspirators.  We, therefore, have "no basis for adjudication" and affirm the ruling of the trial court on these issues.

---

[1] Even had appellant properly proffered the testimony regarding Mason's previous conviction of a felony, her cross-examination of Mason would have been objectionable under Davis v. Alaska, 415 U.S. 308 (1974).  The record clearly indicates that the purpose of appellant's cross-examination of Mason was for general impeachment purposes rather than to show specific bias or prejudice.

## IV.  CONCLUSION

We hold that appellant did not properly preserve the issue of the limitation of Mason's cross-examination and the inadmissibility of appellant's testimony as to the statements of the alleged co-conspirators.  However, because we hold that the admission of the officer's hearsay testimony was not harmless error, we reverse appellant's convictions and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>